IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

SLEP-TONE ENTERTAINMENT
CORPORATION,

        Plaintiff,

  v.

DUFFY'S IRISH PUB and BCK,
CORPORATION,

        Defendants.

No. 6:13-cv-560-TC

FINDINGS & RECOMMENDATION

COFFIN, Magistrate Judge:

Plaintiff brings this action alleging trademark infringement, unfair competition, and common law passing off. Defendants move to dismiss.

Plaintiff obtains licenses to copyrighted songs to create derivative works packaged and branded as Sound Choice® product and marketed to the karaoke industry. Plaintiff owns the Sound Choice trademark and the associated display trademark, as well as the trade dress.

1     - FINDINGS & RECOMMENDATION

Plaintiff alleges that defendant is in possession of and regularly utilizes unauthorized "media-shifted" and "format-shifted" duplicates of karaoke accompaniment tracks which have been falsely marked with plaintiff's trademarks and/or carry distinctive trade dress.[1] While plaintiff permits media-shifting and/or format-shifting of its authorized product, it does so only under certain conditions and tolerances.[2] Plaintiff alleges that it has not authorized defendant to use and display plaintiff's product bearing its trademark and trade dress nor has it authorized defendant to provide services in connection with such marks or trade dress. Accordingly, plaintiff alleges that defendant has not obtained permission to conduct media-shifting or format-shifting of plaintiff's original product.

Plaintiff alleges that defendants' use of plaintiff's marks is likely to cause confusion or deceive defendants' customers into believing that defendants' karaoke services are authorized and that

---

[1] "Media-shift" means copying the karoake accompaniment tracks from compact discs to other media such as a hard disc drive. "Format-shift" means converting the files of accompaniment tracks to a different format such as from CD+G to MP3G or WAV+G.

[2] Plaintiff does not explicitly allege any tolerances associated with file compression that may take place in format-shifting such as converting a Red Book CD+G or WAV+g to a low bit rate MP3G. In addition, plaintiff does not explicitly allege any degradation in quality associated with format-shifting. Plaintiff does allege that "counterfeits" that include its trademark are virtually indistinguishable from the "genuine and licensed Sound Choice materials." Nonetheless, discovery on this issue could reveal degradation and demonstrate defendants are passing off an inferior product as plaintiff's product.

2       - FINDINGS & RECOMMENDATION

defendants' music library contains licensed Sound Choice accompaniment tracks. Plaintiff further alleges that consumers are likely to be deceived into believing that plaintiff sponsored or approved defendants' services. Plaintiff also alleges that defendants' use of its marks will illegitimately convey the tracks as sourced directly from plaintiff.

Defendant BCK asserts that it obtained a karaoke machine loaded with approximately 14,000 tracks when purchased Duffy's Irish Pub in Lebanon, Oregon in 2008. Defendants concede that some of the tracks on the machine display the Sound Choice mark when played. Plaintiff alleges that the tracks were "created through unauthorized duplication," and "originated, directly or indirectly in an unbroken sequence, from the same ultimate source, namely compact discs sold by the plaintiff and made from master recordings belonging to the plaintiff." First Amended Complaint (#8) at ¶ 85.

Defendants argue that the complaint must be dismissed because plaintiff asserts a copyright claim disguised as trademark infringement in violation of the Supreme Court's holding in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003).

The issue raised by the motion to dismiss is not whether the complaint adequately pleads the elements of trademark infringement. Rather, defendants assert that trademark law cannot be extended into this case because the claim is actually occupied by copyright

law.[3] The problem with intellectual property, as opposed to a physical product, with respect to protections afforded under the Lanham Act prohibiting unfair competition and the Trademark Act prohibiting trademark infringement, is the potential for conflict with copyright law. For instance, in <u>Dastar</u>, the issue was whether a passing off claim with respect to a movie in the public domain in essence permitted a cause of action where the right to copy without attribution had passed on to the public. In other words, the intellectual property at issue was no longer protected by copyright law, but the producer of the work sought to assert a trademark infringement claim for failing to attribute its origin to the producer. The Court held, however, that "reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were ), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." <u>Id.</u> at 37. In this case, defendants argue that plaintiff nominally alleges a claim asserting trademark infringement based on confusion about the source of the tracks that

---

[3]It appears that plaintiff cannot assert claims for copyright violation because it only has a licence to use the underlying songs. It is not clear if the artists or a rights management/music publishing companies retain the right to sue for copyright infringement.

4        - FINDINGS & RECOMMENDATION

arises when they are played, but that what plaintiff really alleges is that it was not paid for the unauthorized copies of the tracks, i.e., a copyright type of claim. Defendants contend that plaintiff is attempting to use trademark law to protect the intellectual content of creative works in violation of <u>Dastar</u>.

However, it does not appear plaintiff is seeking to protect the intellectual content of the underlying work. It appears plaintiff merely holds a licence to create derivative works. Plaintiff's trademark protects the licensee and its derivative work <u>and service</u>, which is not protected by copyright at any time. Plaintiff is not placing its trademark on the karaoke tracks to demonstrate it is the author of the underlying songs, but that it is in effect a sponsor of the derivative work and services related to a particular type of use of the underlying songs associated with karaoke. The value of the product is not the underlying authorship of the songs, but the brand associated with the karaoke show. Indeed, plaintiff alleges that the elements of its trade dress represent a specific design choice as one of many ways to convey the necessary information to permit the karaoke singer to be cued or appropriately supported in his or her performance.

The Ninth Circuit's ruling in <u>Sybersound Records, Inc. v. UAV Corp.</u>, is not on point with this case. In <u>Sybersound</u>, the court held that where a karaoke distributor sought to bring an unfair competition claim against competitors who were producing competing

5      - FINDINGS & RECOMMENDATION

products without the proper licensing to the underlying works, the Lanham Act could not be used because it would require litigation of the underlying copyrights and Sybersound lacked standing to bring such copyright claims. Id. at 1144. Plaintiff does not allege trademark violation based on defendant's failure to obtain rights to the underlying songs and thus gaining an unfair advantage by selling a cheaper to produce (illegal) product. Plaintiff is asserting that defendants are using plaintiff's product as if plaintiff authorized such use in compliance with plaintiff's tolerances, causing confusion to consumers. The court need not determine whether defendants have violated the copyright of the underlying songs. Of course, using an apparently exact replica of plaintiff's derivative work may not actually cause any customer confusion, but that is not an issue appropriately resolved on a motion to dismiss. Further, as noted above, plaintiff allegedly provides "services" along with the underlying works and defendant allegedly deceives its customers into believing that such services are sanctioned and within the tolerances of the Sound Choice brand. Accordingly, the case is not subject to dismissal at this stage.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (#20) should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 18t day of September, 2013.

THOMAS M. COFFIN
United States Magistrate Judge